# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BAYVIEW LOAN SERVICING, LLC, | Case No. 2:16-cv-2117-KJD-NJK |
| Plaintiff, | **ORDER** |
| v. | |
| STERLING AT SILVER SPRINGS HOMEOWNERS ASSOCIATION, *et al.*, | |
| Defendant. | |

Before the Court is plaintiff Bayview Loan Servicing, LLC's Partial Motion for Summary Judgment (ECF No. 45). Defendants Sterling at Silver Springs Homeowners Association and Fernando Ruvalcaba responded (ECF Nos. 48, 49), and Bayview replied (ECF Nos. 49, 50).

This case is one of thousands arising from a homeowner association's nonjudicial foreclosure. Bayview Loan Servicing seeks a declaration that Sterling at Silver Springs Homeowners Association's nonjudicial foreclosure did not extinguish its deed of trust on a property located at 5175 Midnight Oil Drive in Las Vegas, Nevada. Bayview's claims boil down to whether the so-called Federal Foreclosure Bar (12 U.S.C. § 4617(j)(3)) prevented the foreclosure from extinguishing the existing deed of trust. The foreclosure bar only insulated Bayview's deed of trust if Fannie Mae or Freddie Mac owned an interest in the Midnight Oil property while under conservatorship of the Federal Housing Finance Agency ("FHFA"). Bayview has shown there is no genuine issue of fact that Freddie Mac was indeed the beneficiary under the deed of trust at the time of foreclosure. It has also shown that Freddie Mac was under FHFA conservatorship at that time. As a result, there is no genuine issue of material fact that the Federal Foreclosure Bar barred extinguishment of Freddie Mac's property interest. Therefore,

Bayview's motion is granted, and the Court declares that Freddie Mac's interest still encumbers the property.

**I.     Background**

**A.  The Housing and Economic Recovery Act and Federal Foreclosure Bar**

Congress passed the Housing and Economic Recovery Act ("HERA") in response to the 2008 recession and its ensuing foreclosure crisis. The purpose of the act was to protect the fragile housing market by addressing the critical undercapitalization of the Federal Home Loan Mortgage Corporation (Freddie Mac) and Federal National Mortgage Association (Fannie Mae). It sought to ensure that the two companies "operated in a safe and sound manner . . . consistent with the public interest." 12 U.S.C. § 4513(a)(1)(B). To that end, the act subjected both Fannie Mae and Freddie Mac to increased oversight and government control.

The act created the Federal Housing Finance Agency ("FHFA") and authorized it to place both Fannie Mae and Freddie Mac under the Agency's conservatorship, which it did in 2008. As conservator, the FHFA was responsible for supervising and winding up Fannie's and Freddie's affairs. 12 U.S.C. § 4617(a)(2). As conservatees, Freddie Mac and Fannie Mae assets received certain federal protections, including protection from non-consensual foreclosure. This has come to be known as the "Federal Foreclosure Bar." See id. § 4617(j)(3) ("No property of the Agency shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency").

**B.  The Foreclosure of 5175 Midnight Oil Drive**

In December of 2006, nonparties Sherry Trasp, Sean Trasp, and Glorianna Trasp purchased the home at 5175 Midnight Oil Drive. The purchase was secured by a deed of trust that was recorded on December 15, 2006. See Deed of Trust 2, ECF No. 45-C. The deed of trust listed the Trasps as borrowers and joint tenants. Id. It listed the Realty Mortgage Corporation as lender and Mortgage Electronic Registration Systems, Inc. ("MERS")[1] "solely as nominee for

---

[1] MERS is an electronic registry system that tracks the beneficial ownership and servicing rights within property-holding portfolios. See About MERSCORP Holdings, Inc., https://www.mersinc.org/about (last visited Mar.16, 2020). While MERS is the recorded mortgagee of a property it may assign the loan to other servicers without having to re-record the deed each time. In essence, MERS remains the mortgagee giving the loan owners the flexibility to change the servicers in their loan portfolios quickly and efficiently. Id.

Lender and Lender's successors and assigns." Id. at 3. According to Bayview, Freddie Mac purchased the loan in January of 2007, became successor to the lender, and acquired ownership of the deed of trust. Freddie Mac's internal records reflect its ownership from January of 2007 through September of 2013, the time of foreclosure. However, there is no public record showing Freddie Mac's interest in the property. Over the next few years, MERS transferred the servicing rights for this loan to multiple loan servicers. In June of 2012, MERS transferred servicing rights from the original lender, Realty Mortgage Corporation, to Bank of America. Assignment of DOT 2, ECF No. 45-D. Bank of America serviced the loan at the time of the association's foreclosure and was listed as beneficiary of the Deed of Trust. Three years later, Bank of America transferred servicing rights to current plaintiff, Bayview Loan Servicing, LLC. Assignment of DOT 2, ECF No. 45-E.

The Trasp's home was part of the Sterling at Silver Springs Homeowners Association and was subject to the association's Covenants, Conditions, and Restrictions ("CC&Rs"). Those CC&Rs required the Trasps to pay periodic assessments for general maintenance and common community upkeep. At some point, the Trasps fell behind on their assessments, which prompted Silver Springs to initiate foreclosure proceedings against them. Silver Springs retained Nevada Association Services to pursue foreclosure on its behalf. Acting as Silver Springs' agent, Nevada Association Services recorded a Notice of Delinquent Assessment Lien against the Midnight Oil Drive property. Not. of Delinquent Assess. Lien 2, ECF No. 45-F. The notice identified a total outstanding balance of $1,229.70, of which $713 was late fees, collection fees, and interest. Id. The Trasps did not satisfy the lien, which caused Nevada Association Services to record a Notice of Default and Election to Sell. Not. of Default, ECF No. 45-G. That notice demanded $2,283.20 in outstanding fees and warned the Trasps that they could lose their home if they did not satisfy the lien. Id. at 2.

Despite those warnings, neither the Trasps nor Bank of America paid the balance that Nevada Association Services claimed was due. Bank of America, however, retained the law firm Miles, Bauer, Bergstrom & Winters to work with Nevada Association Services to ascertain the outstanding balance of the superpriority portion of the association's lien. If Nevada Association

1  Services would disclose that balance, which would presumably be smaller than the total
2  outstanding amount, Miles Bauer was authorized to pay it. Miles Bauer sent a letter to that effect
3  to Nevada Association Services in November of 2012. The letter stated:

> [A] portion of [the association's] HOA lien is arguably senior to BANA's first deed of trust, specifically the nine months of assessments for common expenses . . . It is unclear, based upon the information known to date, what amount the nine months' of common assessments . . . actually are. That amount, whatever it is, is the amount BANA should be required to rightfully pay to discharge its obligations to the HOA . . . and my client hereby offers to pay that sum.

Miles Bauer Letter 3, ECF No. 45-K-2. Nevada Association Services did not provide an account statement detailing nine-months' worth of assessments; in fact, it did not respond to Miles Bauer at all. Miles Bauer interpreted the nonresponse as an indication that Nevada Association Services would reject any attempt to pay the superpriority lien. Miles Bauer then elected not to send a check.

Nevada Association Services proceeded with its foreclosure. On September 13, 2013, Nevada Association Services sold the property at a foreclosure auction. Las Vegas Equity Group, LLC was the buyer, and it paid $8,300 for the home. Foreclosure Deed 4, ECF No. 45-I. Las Vegas Equity Group then recorded a foreclosure deed to memorialize the sale. Id. at 2. Bayview brought this suit to seek quiet title and declaratory relief. See generally Compl., ECF No. 1. Silver Springs answered the complaint and alleged several crossclaims against Nevada Association Services. See Answer, ECF No. 20. In late 2019, Las Vegas Equity Group conveyed its interest in the property to Fernando Ruvalcaba via quitclaim deed. Quitclaim Deed 2, ECF No. 48-1. Ruvalcaba substituted as defendant, and Las Vegas Equity Group was dismissed. Order Granting Sub. of Party, ECF No. 43. The parties have conducted discovery, and Bayview now moves for summary judgment on its declaratory relief claims.

**II.     Legal Standard**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). It is available only

where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

### III. Analysis

Both Bayview and Silver Springs have brought separate claims in this case. Bayview's claims challenge Silver Springs' foreclosure and seek a declaration that its deed of trust survived the association's trustee sale. Bayview's claims break down into two groups of three. The first three claims assert the validity of Bayview's deed of trust regardless of Silver Springs' foreclosure. Those claims are: (1) declaratory relief against Ruvalcaba under the Federal Foreclosure Bar; (2) declaratory relief against each defendant based on Bayview's attempted tender; and (3) quiet title against Ruvalcaba. Bayview's second, and seemingly alternative, group of claims challenges the association's authority to foreclose and its compliance with the requirements of NRS § 116.3116. Those claims are: (4) breach of NRS § 116 against Silver Springs and Nevada Association Services; (5) wrongful foreclosure against Silver Springs and Nevada Association Services; and (6) injunctive relief[2] against Ruvalcaba. Compl. 7–16, ECF No. 1.

Silver Springs' claims do not challenge Bayview's or Freddie Mac's interest in the property. Instead, they shift the liability from the association to Nevada Association Services in

---

[2] The Court dismisses Bayview's sixth claim for injunctive relief because an injunction is a remedy and not a standalone cause of action. See In re Wal-Mart Wage and Hour Emp't Practices Litig., 490 F.Supp. 2d 1091, 1130 (D. Nev. 2007).

the event that Silver Springs is liable to Bayview for its nonjudicial foreclosure. If however, Silver Springs' foreclosure did not extinguish Bayview's deed of trust, the association's claims against Nevada Association Services are moot. Put simply, Silver Springs' claims only kick in if the Court finds the association liable to Bayview. Therefore, the Court will resolve Bayview's claims first.

### A. Bayview's Declaratory Relief Claims

Bayview moves for summary judgment on its two declaratory judgment claims that are based on the Federal Foreclosure Bar and Miles Bauer's attempted tender. Bayview argues that its deed of trust survived Silver Springs' foreclosure because the Federal Foreclosure Bar protected Freddie Mac's interest and because it attempted to tender the superpriority balance before foreclosure. Because Silver Springs' foreclosure was indeed barred by the Federal Foreclosure Bar, the Court need not address whether Bayview's tender was excused. Likewise, Bayview's remaining claims for wrongful foreclosure and breach of NRS § 116 are moot as they were pleaded in the alternative to its quiet title and declaratory relief claims. See P.'s Reply 2, ECF No. 49 ("Bayview agrees that if the Court finds the deed of trust survived [Silver Springs'] foreclosure sale . . . the Court may dismiss all Bayview's claims against [Silver Springs]").

*1. Bayview's Request for Judicial Notice*

At the outset, Bayview asks the Court to take judicial notice of two groups of publicly available documents and one fact related to the FHFA's conservatorship over Fannie Mae and Freddie Mac. The Court may take judicial notice of any fact that is "generally known" or that is easily verifiable by reputable sources. Fed. R. Evid. 201(b). The documents and facts that Bayview submits meet that requirement. The first group of documents consists of recorded instruments that detail the acquisition and assignment history of the property at issue in this case. They qualify for judicial notice because they are public records that are available through the Clark County Recorder's Office, a reputable source. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The next document is the FHFA's statement that it does not consent to state foreclosures. Like the recorded instruments, this is a public document that is available for review on a government website. Judicial notice is appropriate as there is no dispute that the document

itself is reliable. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998–99 (9th Cir. 2010). Finally, Bayview asks the Court to take judicial notice that the FHFA placed Freddie Mac under conservatorship in 2008 and that the enterprise remains under FHFA control. Again, this fact is easily verifiable through federally maintained webpages. See Why Fannie Mae and Freddie Mac are in Conservatorship, https://www.fhfa.gov/Conservatorship (last visited March 13, 2020). Accordingly, the Court takes judicial notice of the public documents and facts that Bank of America requests.

### 2. *The Federal Foreclosure Bar Protected Freddie Mac's Interest*

Next, the Court turns to whether the Federal Foreclosure Bar protected Bayview's deed of trust from extinguishment. The law surrounding the Federal Foreclosure Bar is settled in this circuit. The Housing and Economic Recovery Act of 2008 explicitly protects Freddie Mac and Fannie Mae properties from "levy, attachment, garnishment, *foreclosure, or sale*" without FHFA consent. 12 U.S.C. § 4617(j)(3). Both the Ninth Circuit and Nevada Supreme Courts have recognized that § 4617(j)(3) indeed insulates Freddie Mac and Fannie Mae assets against otherwise valid NRS § 116 foreclosures. See Berezovsky v. Moniz, 869 F.3d 923, 933 (9th Cir. 2017); Saticoy Bay, LLC v. Fed. Nat'l Mortg. Ass'n, 417 P.3d 363, 273 (Nev. 2018). In effect, as long as Freddie Mac or Fannie Mae own an interest in the disputed property and are subject to the FHFA's conservatorship, their property interests cannot be foreclosed absent the FHFA's consent.

Fannie Mae and Freddie Mac need not be listed as beneficiary under the deed of trust to receive protection under the foreclosure bar. Daisy Tr. v. Wells Fargo Bank, N.A., 445 P.3d 846. 849 (Nev. 2019). Nevada's recording statute at the time Freddie Mac acquired its interest here did not require that the assignment be recorded. Instead, the assigning party could record the assignment if it chose. Id. (citing NRS § 106.210 (2006) ("any assignment of the beneficial interest under a deed of trust *may be recorded*") (emphasis added)). Because recording the assignment was optional, Fannie and Freddie's absence from the deed of trust does not doom their claims. Their loan servicers—who generally are listed on the deed of trust—may assert the enterprises' interests. Similarly, Fannie and Freddie need not produce their original promissory

notes or loan agreements to prove their interest in a property. Id. at 850. Both the Ninth Circuit and Nevada Supreme Court have recognized that Freddie Mac and Fannie Mae's internal records coupled with an employee declaration is enough to prove that the enterprise took an interest in the disputed property. Berezovsky, 869 F.3d at 932 n.8; Daisy Tr., 445 P.3d at 851.

Ruvalcaba does not dispute that the Federal Foreclosure Bar generally preempts state-law foreclosures. Instead, he advances a handful of arguments to say that the bar does not apply in this case. Some of these arguments have been expressly rejected by the Ninth Circuit and Nevada Supreme Court, and the others are not persuasive.

Much of Ruvalcaba's opposition argues that Freddie Mac never owned an interest in the Midnight Oil property at all. Freddie Mac's interest is vital to Bayview's claims because if Freddie Mac held no interest, the Federal Foreclosure Bar would not apply, and Bayview's deed of trust would not receive federal protection from the association's foreclosure. First, Ruvalcaba argues that the evidence Bayview submitted to show Freddie Mac's interest is not admissible and does not prove Freddie Mac ever acquired an interest in the property. Admittedly, Freddie Mac is not listed on any of the recorded instruments connected to the Midnight Oil property. Instead, MERS, Bank of America, and ultimately Bayview are listed on those documents in their various capacities.

In support of its property interest, Freddie Mac produced several internal documents accompanied by the declaration of Jeffery Jenkins, a Loss Mitigation Senior, for Freddie Mac. See Jenkins Decl., ECF No. 45-A. The Jenkins declaration interprets and explains the data in the internal records. Those internal documents came from Freddie Mac's Loan Status Manager and "MIDAS" systems. Freddie Mac uses both the Loan Status Manager and MIDAS databases to store information related to Freddie Mac's loan servicers and its loan purchases. Id. at 1. The Jenkins declaration explains that entries in both databases reflect the entity's regularly conducted business activities and "are made at or near the time of the events recorded, by . . . persons with knowledge" of the events. Id. at 2. For this loan, Freddie Mac's records show that the Trasps obtained a loan from Realty Mortgage Corporation in December of 2006 and subsequently executed a note in favor of the lender for the Midnight Oil property. Id. at 2. The records further

1    show that Freddie Mac acquired ownership of the loan shortly thereafter and "has owned it ever
2    since." Id. at 3; MIDAS Record, ECF No. 45-A-1.

3          Ruvalcaba argues that Freddie Mac's evidence is invalid for two reasons: because
4    Freddie Mac failed to record its interest and because the evidence itself is inadmissible. Before
5    the Court examines both arguments, it notes that both the Ninth Circuit and the Nevada Supreme
6    Court have admitted nearly identical evidence as Freddie Mac produces here. See Berezovsky,
7    869 F.3d at 932 n.8; Daisy Tr., 445 P.3d at 851. Nevertheless, Ruvalcaba contends that Freddie
8    Mac's failure to record its interest voids that interest. The Nevada Supreme Court explicitly
9    rejected this argument in Daisy Trust. See 445 P.3d at 851. When Freddie Mac acquired its
10   interest here, Nevada law did not require it to record that interest. At the time, NRS § 106.210
11   made recording optional. Id. at 849 ("when Freddie Mac acquired the loan in 2007, NRS 106.210
12   provided that 'any assignment of the beneficial interest under a deed of trust *may be recorded*'")
13   (emphasis added). This is not the forum to relitigate Daisy Trust as this Court is bound by that
14   decision as far as it interprets state law. Ticknor v. Choice Hotels Intern., Inc., 265 F.3d 931, 939
15   (9th Cir. 2001). Regardless, the business records and declarations that Bank of America
16   submitted are sufficient evidence of Freddie Mac's property interest. Its failure to record does
17   not create a genuine issue of fact as to Freddie Mac's ownership interest.

18         Ruvalcaba's attack on the admissibility of Freddie Mac's internal documents is also
19   unpersuasive. Ruvalcaba mainly argues that the Jenkins Declaration is inadmissible under Rule
20   56(e) of the Nevada Rules of Civil Procedure because the declaration is not based on Jenkins's
21   personal knowledge of the Midnight Oil property. D.'s Resp. 10, ECF No. 48 (citing Nev. R.
22   Civ. P. 56(e)). However, a witness need not be the custodian of records to submit a declaration,
23   nor does the witness need to have personally created the proposed business record. United States
24   v. Childs, 5 F.3d 1328, 1334 (9th Cir. 1993). Records of a regularly conducted business activity
25   may be "shown by the testimony of the custodian *or another qualified witness.*" Fed. R. Evid.
26   803(6)(D). A "qualified witness" need only understand the record-keeping system. Childs, 5 F.3d
27   at 1334; Daisy Tr., 445 P.3d at 235 (evidence not inadmissible merely because the witness did
28   not personally enter the information into the database).

There is no question here that Jenkins is a "qualified witness" under Rule 803(6)(D). His position within the company made Jenkins intimately familiar with the company's Loan Status Manager and MIDAS systems. His declaration states as much. Jenkins Decl. at 1 ("As Loss Mitigation Senior for Freddie Mac, I am familiar with certain Freddie Mac systems and databases . . . [including] Freddie Mac's Loan Status Manager and MIDAS system"). Jenkins further clarified that the entries included with his declaration were input at or near the time of those transactions and that the records were kept in the ordinary course of business. Id. at 1–2. Therefore, like both the Berezovksy and Daisy Trust courts, this Court finds that Freddie Mac's internal record and the Jenkins declaration are admissible evidence of Freddie Mac's valid interest in the Midnight Oil property.

Next, Ruvalcaba argues that Freddie Mac's assertion of ownership violates the statute of frauds because there is no "writing . . . creating, granting, [or] assigning" Freddie Mac' interest. D.'s Resp. at 5 (quoting Leyva v. Nat'l Default Servicing Corp., 255 P.3d 1275, 1279 (Nev. 2011)). Ignoring that both Berezovsky and Daisy Trust confronted the same issues Ruvalcaba raises here and found no statute of frauds issue, Ruvalcaba lacks standing to raise the statute of frauds. The defense of statute of frauds is "personal, and available only to the contracting parties or their successors in interest." Harmon v. Tanner Motor Tours of Nev., Ltd., 377 P.2d 622, 628 (Nev. 1963). All other parties are "stranger[s]" to the underlying transaction and cannot assert a statute of frauds defense. Id. There is no question that Ruvalcaba was not a party to the underlying contract as the foreclosure sale occurred years after Freddie Mac obtained its interest. As a result, he cannot raise the statute of frauds.

Next, Ruvalcaba argues that his status as a bona fide purchaser protects his interest in the property despite the application of the Federal Foreclosure Bar. He claims that 12 U.S.C. § 4617(j)(3) does not conflict with Nevada's bona fide purchaser laws and therefore does not preempt those laws. However, Ruvalcaba's interpretation would eliminate § 4617(j)(3)'s protections against nonconsensual foreclosures. The main purpose of the FHFA's conservatorship over Freddie Mac and Fannie Mae was to support the national housing market by protecting the assets under the enterprises' control. If individual states could circumvent the

foreclosure bar by finding foreclosure buyers bona fide purchasers, HERA's protections would be meaningless.

The Nevada Supreme Court has also recognized that the Federal Foreclosure Bar may "preempt Nevada's law on bona fide purchasers." Nationstar Mortg., LLC v. Guberland, LLC-Series 3, No. 70546, 2018 WL 3025919 at *2 n.3 (Nev. June 15, 2018) (citing JP Morgan Chase Bank v. GDS Fin. Servs., No. 2:17-cv-2451-APG-PAL, 2018 WL 2023123, at *3 (D. Nev. May 1, 2018)). Where state law is unsettled, this Court predicts how the state high court would decide the issue. Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007). Given that the Nevada Supreme Court has recognized that 12 U.S.C. § 4617(j)(3) preempts NRS § 116.3116, the Court predicts that it would also find that § 4617(j)(3) preempts Nevada bona fide purchaser law. Therefore, even if Ruvalcaba could prove his status as a bona fide purchaser, that would not trump the Federal Foreclosure Bar.

Finally, Ruvalcaba asks the Court to imply the FHFA's consent to this foreclosure because the FHFA did not alert potential foreclosure buyers to the existence of the foreclosure bar or provide a system for buyers to obtain FHFA consent. However, the Federal Foreclosure Bar does not impose any duty to notify potential buyers that they must seek FHFA consent to their foreclosure. Section 4617(J)(3) states that none of FHFA's property "shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Agency, nor shall any involuntary lien attach to the property of the Agency." The statute's protection from nonconsensual foreclosure is not contingent upon the FHFA affirmatively disclosing its intent not to consent. The bar works automatically to shield Fannie and Freddie assets under FHFA conservatorship.

In any event, the FHFA did affirmatively disclose its intent not to consent to these foreclosures. In April of 2015, the FHFA released a statement clarifying its decision not to consent to any homeowner association foreclosure. See Stmt. on HOA Super-Priority Lien Foreclosures, Fed. Housing Fin. Agency, https://www.fhfa.gov/Media/PublicAffairs/Pages/Statement-on-HOA-Super-Priority-Lien-Foreclosures.aspx (Apr. 21, 2015). According to the statement, the FHFA "has not consented, and will not consent in the future, to the foreclosure

or other extinguishment of any Fannie Mae or Freddie Mac lien or other property interest in connection with HOA foreclosures of super-priority liens." <u>Id.</u> at 2. That statement is in line with the FHFA's main purpose to protect the assets over which it is conservator. There is no reason to infer consent when the FHFA has explicitly denied its intent to consent to these foreclosures. Therefore, there is no genuine issue of fact that whether the FHFA impliedly consented to foreclosure here.

In all, Bayview has presented adequate evidence that Freddie Mac indeed acquired an ownership interest in the Midnight Oil property before Silver Springs' foreclosure. That evidence is admissible to prove Freddie Mac's interest. Because Freddie Mac owned an interest in the property while under FHFA conservatorship, it enjoyed protection from foreclosure unless the FHFA consented. Ruvalcaba has not presented any evidence that FHFA consented to this foreclosure. As a result, the Federal Foreclosure Bar applies to prevent extinguishment of Bayview's deed of trust. That deed of trust continues to encumber the property, and Ruvalcaba took any interest subject to Bayview and Freddie Mac's. Therefore, the Court grants Bayview's partial motion for summary judgment on its declaratory relief claims and dismisses its remaining claims as moot.

### B. Silver Springs' Crossclaims Against Nevada Association Services are Moot

Next, the Court turns to Silver Springs' crossclaims against Nevada Association Services. Silver Springs' complaint concedes that each of its six crossclaims are moot unless Silver Springs is found to be liable to Bayview. <u>See</u> D.'s Answer at 11 (bringing a claim for implied indemnity "if it is found that [Silver Springs] is liable for any damages to [Bayview]"); <u>id.</u> at 12 (bringing a claim for contribution "if [Bayview] recovers from [Silver Springs]"); <u>id.</u> at 12–13 (bringing a claim for express indemnity for "any sums paid by way of settlement . . . or judgment" to Bayview); <u>id.</u> at 14 (bringing claim for breach of contract wherein Nevada Association Services agreed to indemnify Silver Springs if liable to Bayview). Because the Federal Foreclosure Bar insulated Bayview's deed of trust against extinguishment, the Court did not reach Bayview's wrongful foreclosure or breach of NRS § 116 claims. As a result, Silver Springs is not liable to Bayview, and the crossclaims against Nevada Association Services are

moot. Therefore, the Court dismisses each of Silver Springs' cross claims.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Bayview Loan Servicing, LLC's Motion for Partial Summary Judgment (ECF No. 45) is **GRANTED**. The Court declares that Bayview's deed of trust in the property located at 5175 Midnight Oil Drive in Las Vegas, Nevada survived Sterling at Silver Springs Homeowners Association's nonjudicial foreclosure. Any interest that Las Vegas Equity Group acquired at Silver Springs' foreclosure sale, it acquired subject to Bayview's valid deed of trust. It follows that any interest Fernando Ruvalcaba took in the property it also took subject to Bayview's valid deed of trust.

IT IS FURTHER ORDERED that Bayview's remaining claims are **dismissed as moot**;

IT IS FURTHER ORDERED that each of Sterling at Silver Springs' Homeowners Association's crossclaims against Nevada Association Services are also **dismissed as moot**.

The Clerk of Court is directed to **ENTER JUDGMENT** in favor of plaintiff Bayview Loan Servicing, LLC on its declaratory relief claims and against defendant Fernando Ruvalcaba and close this case.

Dated this 16th day of March, 2020.

_____
Kent J. Dawson
United States District Judge